Updated: March 28, 2014

No. 109,448

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DOUGLAS K. HOESLI,
*Appellant/Cross-appellee,*

v.

TRIPLETT, INC. and FEDERATED MUTUAL INSURANCE COMPANY,
*Appellees/Cross-appellants.*

SYLLABUS BY THE COURT

1.

The purpose of workers compensation is to replace some portion of wages an employee loses as a result of a work-related injury. The grant of a workers compensation award places the injured employee in a similar position in terms of income as the employee was prior to the injury.

2.

K.S.A. 2010 Supp. 44-501(h) provides that an employee's workers compensation award will be set-off by any retirement benefits he or she receives from a retirement benefits program, less any amount the employee contributed to his or her plan.

3.

The setoff provision in K.S.A. 2010 Supp. 44-501(h) seeks to eliminate any duplication of wage loss benefits received from different programs because workers compensation exists to replace some portion of the employee's wage loss due to injury.

1

4.

The Senior Citizens Freedom to Work Act provides that there is no reduction in Social Security retirement benefits due to wages regardless of the amount of wages earned by individuals age 65 and older.

5.

The change in federal Social Security law invalidates the rationale that Social Security retirement benefits are a wage replacement for workers age 65 and older who receive Social Security benefits and earn wages.

6.

In accordance with federal law, a worker is entitled to receive full Social Security benefits and full wages with the result that the two income streams exist fully independent of each other and neither is duplicative of the other.

7.

It is inconsistent with the purpose of the workers compensation setoff in 2010 Supp. 44-501(h) to apply the setoff in a case in which the employee's benefits accrue regardless of whether any other income existed.

Appeal from Workers Compensation Board. Opinion filed March 7, 2014. Affirmed in part, reversed in part, and remanded.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, for appellant/cross-appellee.

*Vincent A. Burnett* and *Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellees/cross-appellants.

Before GREEN, P.J., SCHROEDER, J., and JAMES L. BURGESS, District Judge Retired, assigned.

BURGESS, J.:  Douglas K. Hoesli was injured at work and filed a workers compensation claim. Because Hoesli—who was not yet retired but who was at full retirement age—had already begun collecting Social Security retirement benefits, the administrative law judge (ALJ) determined that the setoff provision in K.S.A. 2010 Supp. 44-501(h) should apply to his permanent partial disability award and reduce the award by the amount of Social Security benefits he receives. The Workers Compensation Board (Board) affirmed, but it refused to consider the setoff's applicability to Hoesli's temporary total disability award because neither party had raised that issue prior to oral argument. Hoesli appeals to this court, arguing both that the Board erred in applying the setoff and also that the setoff is unconstitutional. Additionally, Hoesli's employer, Triplett, Inc., cross-appeals, contending that the Board erred in finding that it lacked jurisdiction to consider the issue regarding Hoesli's temporary total disability.

FACTS

Sometime in 2008, Hoesli began working at Triplett as a truck driver. At that time, Hoesli was 65 years old and not yet collecting Social Security benefits. In April 2008, after Hoesli reached the age of 66, he began drawing his full Social Security benefit of $1,820 a month. His Social Security benefit was not reduced or offset by his full-time employment.

Because of health problems involving dizziness and fainting, Hoesli transferred from truck driving to the maintenance department at Triplett in 2009. In May 2010, Hoesli fell off an extension ladder at one of Triplett's storage units while cleaning leaves out of a gutter and sustained injuries to his back and chest. Doctors determined that Hoesli suffered an L2 compression fracture but determined he could continue working on light duty. Although doctors eventually cleared Hoesli for full-time work, Hoesli continued to experience pain when participating in more strenuous job duties. Due to his continued work difficulties, Hoesli submitted a resignation to Triplett in May 2011,

3

indicating that he had "'decided to retire and help [his] wife.'" Triplett and Hoesli proceeded to discuss his resignation and work out a solution in which Hoesli would return to work on a part-time basis. In June 2011, Hoesli resumed working 2 days a week; in September of the same year, he increased to 3 days a week. Although Hoesli continued to have pain during activities involving heavy lifting, he continued working 3 days a week even during the adjudication of his workers compensation case. It is unclear from the record whether Hoesli still works at Triplett.

While working for Triplett part-time in June 2011, Hoesli applied for a workers compensation hearing based on his work injuries. A hearing was held on his application on January 19, 2012. The parties stipulated to the existence of Hoesli's injuries and the fact that those injuries arose out of and in the course of his employment, but they disputed four major issues. A primary issue and the subject of this appeal involved the applicability of the setoff provision present in K.S.A. 2010 Supp. 44-501(h), which reduces an injured employee's compensation when he or she is also receiving retirement benefits such as Social Security. Although Hoesli contended that modern changes to federal Social Security law altered the setoff's applicability to his case, Triplett argued that Kansas caselaw demanded application of the provision. After reviewing the relevant caselaw, the ALJ stated:

> "This court is unable to identify any duplication of benefits between [Hoesli]'s social security old age benefits and his workers compensation benefits. They were two separate, distinct and independent revenue streams, that would have continued for the foreseeable future, but for the work-related injury. However . . . the later decision in [a prior Kansas case] . . . and the plain language of K.S.A. 44-501(h) appear to mandate application of the set-off."

The ALJ then applied the setoff to Hoesli's permanent partial disability (PPD) benefits but not to his 13% permanent partial functional impairment benefits. The ALJ

4

did not discuss the setoff's effect on Hoesli's temporary total disability (TTD) compensation.

Hoesli applied for review by the Board to determine, among other things, whether the setoff should apply to his PPD award. The Board heard argument on November 6, 2012. Although the record is somewhat unclear, it appears that, at oral argument, Triplett argued that the setoff applied to *both* Hoesli's PPD and TTD awards rather than just his PPD award. The Board affirmed the ALJ's ruling regarding the application of the setoff to the PPD award. Regarding the application of the setoff to Hoesli's TTD compensation, the Board explained:

> "However, the ALJ did not address whether an offset of [Hoesli]'s social security benefits should be allowed against the TTD awarded [Hoesli]. The only limitation placed on the offset by K.S.A. 2009 Supp. 44-501(h) deals with [Hoesli]'s functional impairment. [Triplett] argues that the social security offset should apply to the payment of TTD as well as any permanent work disability, above the functional impairment awarded to [Hoesli]. However, this issue does not appear to have been raised to the ALJ at the time of the regular hearing nor in [Triplett]'s submission letter to the ALJ. Under K.S.A. 2009 Supp. 44-555(c) the Board is limited to deciding issues raised to and determined by the ALJ. That is not the case here on the TTD offset issue."

Notably, however, the Board reviewed Triplett's argument and determined that applying the offset to Hoesli's TTD award would run afoul of K.S.A. 2010 Supp. 44-501(h). The Board ultimately declined to modify the award.

On February 27, 2013, Hoesli subsequently filed a petition for judicial review of the Board's decision regarding the setoff's applicability and also raising the issue of the setoff's constitutionality. On March 18, 2013, Triplett filed a cross-petition for review, appealing the Board's determination that it lacked jurisdiction to consider the setoff's applicability to Hoesli's TTD benefits.

5

*Did the board err in applying the setoff provision in K.S.A. 2010 Supp. 44-501(h) to Hoesli's permanent partial disability award?*

Hoesli argues that the Board erred by affirming the ALJ's application of the setoff to his PPD award. Although Hoesli acknowledges that Kansas caselaw has repeatedly applied the provision in circumstances similar to his, he primarily distinguishes these cases due to recent changes in federal law. Triplett, however, argues that these cases are not distinguishable and that not applying the setoff would run afoul of the statute's purpose.

Final orders of the Board are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. K.S.A. 2010 Supp. 44-556(a). Appellate courts have an unlimited review of questions involving the interpretation or construction of a statute, owing "'[n]o significant deference'" to the agency's or the Board's interpretation or construction. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 457, 228 P.3d 403 (2010). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013).

The statute at issue in this case, K.S.A. 2010 Supp. 44-501(h), provides in relevant part:

"If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

More simply put, an employee's worker compensation award will be set off by any retirement benefits he or she receives from a retirement benefit program, less any amount the employee contributed to his or her plan. K.S.A. 2010 Supp. 44-501(h). This setoff provision includes benefits received under the federal Social Security act. See K.S.A. 2010 Supp. 44-501(h).

This court and our Kansas Supreme Court have considered the purpose and intent of the setoff provision several times in its history. In the first case concerning the setoff provision—which at that time was K.S.A. 1976 Supp. 44-510f(c)—this court reviewed the purpose and rationale for workers compensation statutes. See *Boyd v. Barton Transfer & Storage*, 2 Kan. App. 2d 425, 426-28, 580 P.2d 1366, *rev. denied* 225 Kan. 843 (1978). There, the claimant, a retiree collecting Social Security benefits, had returned to work part-time at a rate that would supplement his Social Security benefits without rendering him ineligible. His workers compensation claim was denied because his Social Security benefits exceeded what would be his workers compensation award. He appealed, challenging the constitutionality of the setoff.

In its decision, this court noted that the 1974 revision to the workers compensation laws in Kansas "sought to eliminate any duplication of wage-loss benefits by different

7

programs" because workers compensation existed "'to replace some proportion of wage loss.'" 2 Kan. App. 2d at 426-27. In gleaning the purpose of K.S.A. 1976 Supp. 44-510f(c), this court specifically focused on *Baker v. List and Clark Construction Co.*, 222 Kan. 127, 563 P.2d 431 (1977), which analyzed the constitutionality of a similar setoff provision regarding death benefits received by dependents. In *Baker*, our Supreme Court relied on a treatise on workers compensation and noted the following:

> "'Once it is recognized that workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed. . . .'"
> "'Wage-loss legislation is designed to restore to the worker a portion . . . of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that [the three categories of benefits] are all parts of a system based upon a common principle.'" 222 Kan. at 130-31 (quoting 4A Larson, The Law of Workmen's Compensation §§ 97.00, 97.10 [1976]).

See *Boyd*, 2 Kan. App. 2d at 427.

This court in *Boyd* determined that the purpose of K.S.A. 1976 Supp. 44-510f(c) was much the same: to eliminate duplicative benefits. 2 Kan. App. 2d at 427. The court stated that it would be reasonable if workers compensation terminated when the employee retired because "[t]he worker would suffer only one wage loss, but continued workmen's compensation after retirement would duplicate the wage-loss replacement of the old age social security benefits which begin at that time." 2 Kan. App. 2d at 428.

However, this court noted the difference between those individuals receiving workers compensation who then later retire and those who, after retirement, returned to work. Retirees who resume working, the court reasoned, "suffer a second wage loss when they are injured in the course of their employment." 2 Kan. App. 2d at 428. To apply the setoff to those individuals would "totally preclude any replacement of the wages which they are entitled to earn over and above old age social security benefits," preventing not wage duplication but rather the very wage replacement that workers compensation laws exist to provide. 2 Kan. App. 2d at 428. Because a strict reading of the setoff provision ran afoul of the "spirit and reason" of the workers compensation act in place at the time, this court determined that the setoff did not apply to retirees who returned to work and were then injured on the job. 2 Kan. App. 2d at 429.

Our Supreme Court essentially adopted this reasoning in *Dickens v. Pizza Co.*, 266 Kan. 1066, 974 P.2d 601 (1999), a case with facts very similar to the facts in *Boyd*. There, our Supreme Court noted that the primary concern in cases applying the setoff to retirees who later returned to work was the "disparate treatment of individuals such as [the claimant in *Dickens*], seeking to supplement social security income, compared to other social security beneficiaries." 266 Kan. at 1071. The court reaffirmed that although the setoff aims to prevent duplicative benefits, there is no duplication of benefits when a retired worker who is already receiving Social Security benefits returns to work, is injured, and receives a workers compensation award. 266 Kan. at 1071.

In 2004, this court revisited the rationale of *Dickens* in *McIntosh v. Sedgwick County*, 32 Kan. App. 2d 889, 91 P.3d 545, *rev. denied* 278 Kan. 846 (2004). In that case, the claimant began receiving Social Security benefits after turning 65 in the spring of 1999 but continued working full time. He scheduled an August retirement date but was injured on the job a few months prior to retiring. The court determined that because the claimant was not retired at the time of his injury as in *Dickens*, the income from his full-time job "was not post-retirement income used to supplement his retirement income." 32

9

Kan. App. 2d at 897. In summarizing the function of the setoff provision, the court stated: "The cases show two consistent patterns: (1) injury, then retirement: no duplication of benefits allowed . . . and (2) retirement, then injury: multiple benefits allowed." 32 Kan. App. 2d at 897. The court further explained that when an injury occurs before the employee's retirement,

> "the appellate courts have consistently held that social security retirement benefits are designed to restore a portion of an employee's wages lost due to age and, therefore, duplicate workers compensation benefits, which are designed to restore a portion of an employee's wages lost due to injury." 32 Kan. App. 2d at 897.

Because the claimant began receiving Social Security benefits before retirement only in anticipation of "the wage loss that would result from his eventual retirement," the court held that the setoff applied. 32 Kan. App. 2d at 897-98.

Although our Supreme Court has not reconsidered the two-category approach established in *McIntosh*, this court has continued to address cases in this manner. See *Jones v. Securitas Security Services*, No. 105,414, 2011 WL 6311105 (Kan. App. 2011) (unpublished opinion) (precluding application of the setoff to retiree injured at postretirement job); *Anderson v. Blue Ribbon Farm and Home*, No. 97,618, 2007 WL 2301949 (Kan. App.) (unpublished opinion) (applying setoff to unretired employee receiving Social Security benefits), *rev. denied* 285 Kan. 1173 (2007). Close in facts to this case is a recent case before this court, *Morales v. Wal-Mart*, No. 107,526, 2013 WL 1010438 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. ___ (October 17, 2013). There, the claimant began receiving Social Security benefits prior to reaching full retirement age. A few months later, she was injured at work. The Board found that because the claimant was receiving Social Security benefits prior to her injury, the setoff could not apply. This court considered the holdings in *Dickens* and *McIntosh* and framed the question as "whether [the claimant] retired before her employment at Wal-Mart and

10

her subsequent injury." *Morales*, 2013 WL 1010438, at *5. The court then went on to explain:

> "The statutory exception set forth by *Dickens* is based on the rationale that workers who already are retired and receiving social security retirement benefits before starting work on a part-time job to supplement those benefits suffer a second wage loss when they are injured in the course of their employment." 2013 WL 1010438, at *5.

Because there was no evidence showing that Morales had retired and that her employment at Wal-Mart existed to supplement her retirement income, the court determined that the setoff provision applied. 2013 WL 1010438, at *5.

The ALJ's and the Board's decisions were each based on the rule established in *McIntosh* and determined that because Hoesli had not yet retired, the setoff applied. Hoesli admits that he worked at Triplett prior to receiving Social Security retirement benefits and that he continued working after those benefits began. In fact, Hoesli referred to retirement in his May 2011 resignation letter, demonstrating that up until that time, he did not consider himself retired. Based on the principles in *Dickens* and *McIntosh*, it seems clear that Hoesli falls into *McIntosh*'s second category: he was an unretired worker receiving Social Security benefits when injured on the job and, therefore, the setoff would apply. See 32 Kan. App. at 897.

However, Hoesli raises a novel argument regarding the interplay between the setoff provision and federal Social Security law. Hoesli contends not that *McIntosh* and *Dickens* were wrongly decided but rather that their application is altered by the Senior Citizens' Freedom to Work Act of 2000, Pub. L. 106-182. See 42 U.S.C. §§ 402-403 (2006).The Act allows individuals age 65 and older to receive Social Security benefits and continue to work without penalty or reduction in wages. See *Merrill v. Utah Labor Com'n*, 223 P.3d 1089, 1097 (Utah 2009) (explaining effect of Senior Citizens' Freedom

11

to Work Act). Hoesli contends that, based on this change in federal law, his two sets of benefits—that is, Social Security benefits and workers compensation benefits—are not duplicative because he was entitled to both revenue streams prior to his injury and should continue to be entitled to both streams after.

Although the relationship between the setoff provision and this federal statutory change is a matter of first impression in Kansas, other states have tackled the issue. In *Reesor v. Montana State Fund*, 325 Mont. 1, 8, 103 P.3d 1019 (2004), when considering a setoff provision similar to that in Kansas, the Montana Supreme Court explained the federal statutory change as follows:

> "[S]ocial security retirement benefits are not wage loss benefits. There is no requirement that to be entitled to social security benefits a person must stop working. In 2000, the federal government enacted the Senior Citizen's Freedom to Work Act (42 U.S.C. 402) which eliminated the earnings limit for workers over the age of 65. Thus, there is no longer a reduction in social security retirement benefits due to wages regardless of the amount of wages earned by individuals age 65 and older."

The Utah Supreme Court agreed with this position. See *Merrill*, 223 P.3d at 1097. In fact, the court there noted that the change in federal Social Security law "invalidat[ed] the rationale that social security retirement benefits are a wage replacement," and that under the change, the benefits were "not simply wage-loss replacement benefits, but serve[d] other, important purposes." 223 P.3d at 1097-98. Although that court did note that other jurisdictions, including Kansas, construe Social Security benefits as wage replacement benefits, the cases cited all predate the passage of the Senior Citizens' Freedom to Work Act. See 223 P.3d at 1098 (citing *Brown v. Goodyear Tire & Rubber Co.*, 3 Kans. App. 2d 648, 652-55, 599 P.2d 1031 [1979]).

Triplett contends that Hoesli's reliance on the 2000 federal act is a "'red herring'" because "it does not abrogate the legislative purpose of [the setoff provision]—to prevent

duplication of wage loss benefits." Additionally, Triplett attempts to analogize Hoesli's situation to that of the claimant in *McIntosh* by arguing that Hoesli's resignation letter in May 2011 and brief time off work qualifies as retiring. Triplett essentially argues that Hoesli's resignation letter proves he was injured before retiring and that when his hours were reduced and he experienced wage loss the benefits became duplicative.

Although Triplett's argument aligns itself with Kansas caselaw, it is illogical under the federal Social Security scheme as modified in 2000. As the ALJ observed in his order, there was no "duplication of benefits between [Hoesli]'s social security old age benefits and his workers compensation benefits. They were two separate, distinct and independent revenue streams, that would have continued for the foreseeable future, but for the work-related injury." Whereas Hoesli's Social Security benefits may have increased upon his injury and reduced hours under the old federal scheme, Hoesli—of full retirement age—was permitted both to receive his full Social Security benefits *and* a full-time salary from Triplett prior to his injury due to the 2000 federal statutory change. As the two income streams existed fully independent of one another and Hoesli received each without any limitation or reduction, it is difficult to justify relabeling one as duplicative simply due to Hoesli's injury.

Clearly, the plain language of K.S.A. 2010 Supp. 44-501(h) indicates that the setoff applies to any individual receiving federal Social Security retirement benefits irrespective of any other considerations. Recent cases indicate that our Supreme Court "has emphasized that when a workers compensation statute is plain and unambiguous, an appellate court must give effect to the statute's express language rather than determine what the law should or should not be." *Roles v. Boeing Co.*, 43 Kan. App. 2d 619, 632, 230 P.3d 771 (2010). However, legislative intent also plays a key role in questions of statutory construction, and our Kansas appellate courts have considered the intent behind our Kansas workers compensation statutes many times. See *Bergstrom*, 289 Kan. at 607. It is counterintuitive to apply a statute that is intended "to eliminate any duplication of

13

wage-loss benefits by different programs" in a case in which one program's benefits accrued regardless of whether any other income existed. See *Boyd*, 2 Kan. App. 2d at 427. Under these facts, the setoff provision in K.S.A. 2010 Supp. 44-501(h) creates the same problem that this court disapproved of in *Boyd*, running afoul of the statute's purpose by "totally preclud[ing] any replacement of the wages which [an individual is] entitled to earn over and above old age social security benefits." See 2 Kan. App. 2d at 428.

Unlike in *McIntosh*, Hoesli had no retirement date in mind, which suggests he did not begin collecting Social Security benefits in anticipation of "the wage loss that would result from his eventual retirement." 32 Kan. App. 2d at 897. Instead, he began collecting Social Security benefits when he reached his full retirement age and was entitled to do so—and incidentally continued to work at Triplett. His 2010 injury limited his ability to continue working full time, reducing one of his income streams. Although Hoesli never retired, his choice to continue working past retirement age can be viewed as a decision to supplement his Social Security benefits as in *Dickens*, 266 Kan. at 1071. Applying the setoff provision in this case fails to protect Hoelsi from the wage loss he suffered after his injury, ultimately running afoul of the purpose of workers compensation legislation. See *Baker*, 222 Kan. at 131.

Recent opinions by our Kansas Supreme Court indicate that the *Dickens* exception continues to be good law, but they fail to express any clear approval or disapproval of the two categories established in *McIntosh*. See, *e.g.*, *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, 285-86, 241 P.3d 15 (2010). Based on *McIntosh* and those unpublished opinions following it, the Board's decision in applying the setoff provision to Hoesli's workers compensation award would be logical. However, application of the 2000 change to federal law creates a case of first impression in Kansas. Thus, looking at it in conjunction with the purpose and intent behind our workers compensation laws in general

14

and the setoff in particular, there is a reasonable basis to find that the setoff should not apply and we should reverse the Board's determination.

The final analysis boils down to several essential facts. At the time of Hoesli's work-related injury, he was entitled to receive and was receiving two streams of income. Neither source of income was subject to setoff or any other limitation. Hoesli would have continued to receive both undiminished streams of income into the future but for his work-related injury. The grant of a workers compensation award in this case would serve to make Hoesli whole. It would replace an income he was legally receiving and would place him in a position similar to the position he was in prior to his injury. To apply the setoff would act as a penalty, placing Hoesli in a worse position than he was in prior to the injury. To apply the K.S.A. 2010 Supp. 44-501(h) setoff would result in an outcome inconsistent with the stated purpose of wage-loss replacement under our workers compensation statutes. Therefore, we reverse the ruling of the Board.

Hoesli also raises an issue concerning the constitutionality of the setoff provision in K.S.A. 2010 Supp. 44-501(h). However, because we are reversing the Board's determination, this second issue is rendered moot.

CROSS-APPEAL

*Should the setoff provision in K.S.A. 2010 Supp. 44-501(h) apply to Hoesli's temporary total disability award?*

In cross-appealing the Board's decision, Triplett argues that the Board erred in finding it lacked jurisdiction to consider the applicability of the K.S.A. 2010 Supp. 44-501(h) setoff to Hoesli's TTD award. Triplett frames its argument in several different ways, contending: (1) that applying the setoff to the TTD award simply amounts to altering the overall award rather than determining a new issue; (2) that the Board's standard of review allows it to hear the TTD issue for the first time on appeal; (3) that the

15

setoff itself is the relevant issue, not the TTD benefits; (4) that the Board decided the issue despite its jurisdictional concerns; and (5) that this issue involves a question of law that may be decided on established facts. Hoesli rebuffs this claim, arguing that the Board cannot hear an argument that was not introduced to and argued before the ALJ.

As previously stated, appellate courts have an unlimited review of questions involving the interpretation or construction of a statute. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 457, 228 P.3d 403 (2010). Additionally, whether jurisdiction exists is a question of law over which this court also exercises unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

The Board has "exclusive jurisdiction to review all decisions, findings, orders and awards of compensation" by an ALJ in a workers compensation case. K.S.A. 2010 Supp. 44-555c(a). This review "shall be upon questions of law and fact as presented and shown by a transcript of the evidence and the proceedings as presented, had and introduced before the [ALJ]." K.S.A. 2010 Supp. 44-555c(a). On review, the Board is authorized to make a number of dispositions, including granting or refusing compensation, increasing or diminishing any award, or remanding the proceedings to the ALJ. K.S.A. 2010 Supp. 44-551(i)(1).

Three of Triplett's arguments are by their nature intertwined. Pointing to K.S.A. 2010 Supp. 44-551(i)(1), Triplett categorizes application of the setoff to the TTD benefits not as an independent issue for consideration but rather an alteration of the existing award—and then bolsters that argument by disputing the claim that K.S.A. 2010 Supp. 44-555c(a) limits the scope of the Board's review. Triplett further contends that because the setoff is the primary issue in the case, it was fairly before and decided by the ALJ.

In so arguing, Triplett relies on *Woodward v. Beech Aircraft Corp.*, 24 Kan. App. 2d 510, 515-16, 949 P.2d 1149 (1997), where this court observed that the Board is not

limited "to issues raised in the written request for [Board] review." There, the parties raised an issue before the Board at oral argument that, although considered and decided by the ALJ, did not appear in their briefs. Similar to the *Woodward* case, neither party in this case raised the TTD issue until oral argument in this case, However, neither party raised the issue of the setoff's applicability to the TTD benefits before the ALJ either. Moreover, the ALJ made no ruling regarding whether the setoff reached the TTD benefits. As such, this case resembles *Hunn v. Montgomery Ward*, No. 104,523, 2011 WL 2555689 (Kan. App. 2011) (unpublished opinion), in which the employer raised a jurisdictional issue before the Board after failing to raise the same before the ALJ. This court reviewed K.S.A. 2010 Supp. 44-555c(a) and determined that "[b]ecause the previously mentioned issue was not raised by [the employer] to the ALJ or decided by the ALJ, it cannot be raised or decided by the Board." 2011 WL 2555689, at *5.

Triplett attempts to combat this by pointing out that the K.S.A. 2010 Supp. 44-501(h) setoff in general is a key issue in this case and was therefore briefed and heard before the ALJ to a degree sufficient for the Board to consider the matter. But as Triplett observes in its briefs—and as the Board implies in its discussion of whether the setoff *should* apply to TTD benefits—the issue is more complicated than that. TTD and PPD are two different types of benefits. Compare K.S.A. 44-510c(b)(2) with K.S.A. 44-510d. TTD "exists when the employee, on account of the injury, has been rendered *completely* and *temporarily* incapable of engaging in any type of substantial and gainful employment" and require certain proof from health care providers, whereas PPD is "*partial* in character but *permanent* in quality." (Emphasis added.) K.S.A. 44-510c(b)(2); K.S.A. 44-510d(a). PPD occurs either pursuant to a schedule or to an award calculation scheme that is wholly different from the calculation used for TTD benefits. Compare K.S.A. 44-510d(a) and K.S.A. 44-510e(a) (PPD benefits) with K.S.A. 44-510c(b) (TTD benefits). Due to these differences, applying the setoff to TTD benefits involves different questions of law and statutory interpretation than applying it to PPD benefits—questions not raised, heard, and decided before the ALJ. The existence of such questions also

17

demonstrates that applying the setoff to Hoesli's TTD benefits is more complicated than a mere mechanical application of a rule, removing it from being simply an award modification pursuant to K.S.A. 2010 Supp. 44-551(i)(1).

Furthermore, the specific issue of setting off TTD benefits to the extent of a claimant's Social Security benefits appears to be a matter of first impression in Kansas. No statute or case stands for the proposition that TTD benefits and PPD benefits should be treated the same way under the setoff. It therefore cannot fairly be said that the ALJ's finding that it applies to PPD benefits is similar enough to finding it applies to TTD benefits to consider it a "question[] of law . . . presented and shown by a transcript of the evidence and the proceedings as presented, had and introduced before the [ALJ]" under K.S.A. 2010 Supp. 44-555c(a).

Triplett also contends that the Board's discussion of the setoff's applicability to TTD benefits constitutes a decision on the issue. Triplett points to the Board's discussion of TTD benefits, noting that the Board concludes by stating that "[t]he Award will not be modified to offset claimant's TTD by his weekly social security benefit." Triplett insists this statement constitutes a decision of the issue on its merits.

However, prior to its discussion, the Board affirmatively stated that it was "limited to deciding issues raised to and determined by the ALJ," which was "not the case here on the TTD offset." In *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 4, 596 P.2d 446 (1979), our Supreme Court noted that "'[d]ictum often develops in opinions from comments upon arguments advanced by counsel for the respective parties'" and that it "'may be respected but should not control a judgment in a subsequent case when the precise point is presented, argued, and considered by the entire court.'" Although the Board discussed the setoff's applicability, it was "not determinative of the issue[]" and continues to not be so. See 226 Kan. at 4. Instead, the TTD issue was determined by the Board finding that it lacked jurisdiction to consider Triplett's new argument.

18

Triplett finally contends that even if the Board lacked jurisdiction to determine the TTD issue, the appellate court may consider it for the first time on appeal as it is a question of law on established facts. Triplett raises this argument for the first time in its reply brief, relying on Kansas caselaw that indicates that an issue may be raised for the first time on appeal provided that it is a question of law to be decided on established facts. See *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, 228, 130 P.3d 57 (2006). However, as previously stated, this court's review of the Board's action is controlled not by general principles of appellate procedure but by the KJRA. See K.S.A. 2010 Supp. 44-556(a). The KJRA limits when an individual "may obtain judicial review of an issue that was not raised before the agency." K.S.A. 2010 Supp. 77-617. New issues may only be raised upon a request for judicial review if: (1) the agency lacked jurisdiction to grant a remedy; (2) the action subject to review is a rule and regulation and the party requesting review was not a party during agency proceedings sufficient to raise the issue before the agency; (3) the party requesting review was not notified of the agency proceeding and the action in question is an order from that proceeding; or (4) the interests of justice would be served by judicial review because either the controlling law changed after the agency acted or the agency action occurred after the party requesting review exhausted all feasible opportunities for agency relief. K.S.A. 2010 Supp. 77-617(a)-(d).

It appears on the face of the statute that none of the exceptions apply in this case. As such, this court cannot hear the TTD issue for the first time on appeal.

Because the ALJ did not hear the TTD issue, the Board properly concluded that it lacked jurisdiction to consider it on appeal. Moreover, hearing this issue for the first time on appeal would run afoul of the KJRA. As such, the Board's decision that it lacked jurisdiction is affirmed.

Affirmed in part, reversed in part, and remanded.