IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,448

DOUGLAS K. HOESLI,
*Appellant/Cross-appellee*,

v.

TRIPLETT, INC. and FEDERATED MUTUAL INSURANCE COMPANY,
*Appellees/Cross-appellants.*

SYLLABUS BY THE COURT

1.

When a statute is plain and unambiguous, the court must give effect to its express language, rather than determine what the law should or should not be. A court determines legislative intent by first applying the meaning of the statute's text to a specific situation at issue. A court does not read into the statute words not readily found there.

2.

When the language of a statute is unclear or ambiguous a court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning.

3.

The doctrine of stare decisis instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised.

4.

The doctrine of stare decisis is not unyielding. A court of last resort can overrule prior caselaw when: (a) it is clearly convinced a rule of law established in its earlier cases was originally erroneous or is no longer sound because of changing conditions; and (b) more good than harm will come by departing from precedent.

5.

K.S.A. 2010 Supp. 44-501(h) unambiguously provides that workers compensation is subject to offset when the injured worker is simultaneously receiving social security retirement benefits. The contrary holdings in *Dickens v. Pizza Co., Inc.*, 266 Kan. 1066, 1071, 974 P.2d 601 (1999), and subsequent cases, which carved out exceptions to the statute's plain language, are overruled.

6.

A court must construe a statute as constitutionally valid if there is any reasonable way to do so. But this rule cannot be relied upon to change the meaning of unambiguous statutory language.

7.

K.S.A. 2010 Supp. 44-501(h) does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The statute's purpose is to avoid duplication of wage-loss benefits and its provisions satisfy the applicable rational basis test.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 1011, 321 P.3d 18 (2014). Appeal from the Workers Compensation Board. Opinion filed November 20, 2015. Judgment of the Court of Appeals affirming in part, vacating in part, and remanding is reversed as to the issue subject to review. Judgment of the Workers Compensation Board is affirmed as to the issue subject to review.

2

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the briefs for appellant/cross-appellee.

*Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause, and *Vincent A. Burnett*, of the same firm, was with him on the briefs for appellees/cross-appellants.

The opinion of the court was delivered by

BILES, J.: Under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*, an injured worker's compensation must be reduced by any social security retirement benefits received by that worker, subject to certain limitations. K.S.A. 2010 Supp. 44-501(h). But Kansas courts have limited this statutory offset and permitted already-retired claimants, who were working simply to supplement their social security at the time of injury, full workers compensation. See *Dickens v. Pizza Co., Inc.*, 266 Kan. 1066, 1071, 974 P.2d 601 (1999). These prior cases adopting the exception relied upon a belief that the offset's purpose was to prevent duplicative wage-loss benefits and that workers compensation was not duplicative when an injured worker's wages were in addition to social security benefits already being received. 266 Kan. at 1071. The question in this case is whether that reasoning is valid given the statute's actual text.

As explained below, we hold that *Dickens* must be overruled because its foundation rests on what was viewed as the legislature's subjective intent rather than conforming to the statutory language and correctly applying our longstanding caselaw for statutory interpretation. We reverse the Court of Appeal because it followed *Dickens* and its progeny. See *Hoesli v. Triplett*, Inc., 49 Kan. App. 2d 1011, 1023, 321 P.3d 18 (2014); see also *Snider v. American Family Mut. Ins. Co*., 297 Kan. 157, 168, 298 P.3d 1120

3

(2013) (Court of Appeals duty bound to follow Kansas Supreme Court precedent, absent some indication the Kansas Supreme Court is departing from its previous position).

## FACTUAL AND PROCEDURAL BACKGROUND

Douglas K. Hoesli, a full-time maintenance worker with Triplett, Inc., was injured in a workplace accident for which he is entitled to workers compensation. Prior to his injury, Hoesli was receiving social security retirement benefits and earning additional employment income without a reduction in his social security because he had reached full retirement age. See 42 U.S.C. § 403(f)(8)(E) (2012). As a result of his work-related injury, Hoesli's workers compensation was determined to be $341.08 a week. The weekly equivalent of his social security retirement benefits was $420.

At the administrative level, controversy ensued over whether state law required Hoesli's workers compensation to be reduced by his social security retirement benefits because of the offset statute, K.S.A. 2010 Supp. 44-501(h). It provides:

> "If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, *any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits*, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment." (Emphasis added.) K.S.A. 2010 Supp. 44-501(h).

4

Based on the italicized language, the administrative law judge (ALJ) ruled the employer could use Hoesli's social security benefits to offset its workers compensation obligation. The ALJ awarded Hoesli payment for his permanent partial general disability only to the extent of his 13% functional impairment, or 53.95 weeks of benefits, because the weekly equivalent amount of Hoesli's social security benefits exceeded his weekly workers compensation. This adjustment was based on the statutory limitation that the offset must not be less than the benefits payable for the percentage of functional impairment resulting from the injury. See K.S.A. 2010 Supp. 44-501(h). The ALJ also awarded Hoesli 12 weeks of benefits for his temporary total disability. The Workers Compensation Board affirmed the ALJ's award, and both parties appealed to the Court of Appeals.

In that court, Hoesli argued the Board's permanent partial disability award was wrong because the offset statute did not apply and he should receive both streams of income, *i.e.*, workers compensation and the social security retirement benefits in full, based on the reasoning underlying *Dickens*. Alternatively, Hoesli argued offsetting his workers compensation payments would violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the offset was not rationally related to the statute's purpose of preventing duplicative recovery of wage-loss benefits. In a cross-appeal, Triplett challenged the Board's refusal to address its claim that the ALJ erred by failing to apply the offset to Hoesli's temporary total disability benefits.

The Court of Appeals reversed the Board's offset, holding K.S.A. 2010 Supp. 44-501(h) does not apply when the claimant has reached full retirement age under the Social Security Act and was already receiving social security retirement benefits at the time of injury. *Hoesli*, 49 Kan. App. 2d at 1023. The panel declined to address Hoesli's alternative constitutional claim because it had reversed the Board's offset. 49 Kan. App.

5

2d at 1023. The panel further held that Triplett failed to preserve for appeal its challenge to Hoesli's temporary total disability award. 49 Kan. App. 2d at 1027.

Triplett petitioned this court for review of the panel's interpretation of the offset statute, which we granted. Hoesli did not cross-petition for review of the panel's decision declining to reach the merits of his constitutional claim. Jurisdiction is proper under K.S.A. 60-2101(b) (review of Court of Appeals decisions).

## OFFSET IS REQUIRED BY K.S.A. 2010 SUPP. 44-501(h)

Triplett argues K.S.A. 2010 Supp. 44-501(h)'s plain language requires an offset without exception and urges us to overrule the prior caselaw creating an exception. Hoesli argues we must continue to follow this court's precedent and interpret that statute to include an exception in circumstances like his based on the principles underlying federal Social Security law. See Senior Citizens' Freedom to Work Act of 2000, Pul. L. 106-182; 42 U.S.C. §§ 402-403 (2012). He also argues this interpretation is necessary to avoid an unconstitutional result.

*Standard of Review*

The Workers Compensation Board's decision is subject to appellate review under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. K.S.A. 2014 Supp. 44-556(a). Relief may be granted if the Board erroneously interpreted or applied the law. K.S.A. 2014 Supp. 77-621(c)(4). Whether the Board properly interpreted and applied K.S.A. 2010 Supp. 44-501(h) is a question of law subject to de novo review. See *Whaley v. Sharp*, 301 Kan. 192, 196, 343 P.3d 63 (2014).

6

*Discussion*

When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007). We determine legislative intent by first applying the meaning of the statute's text to the specific situation in controversy. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014) (first task in construing statute is to ascertain legislative intent through analysis of language employed, giving ordinary words their ordinary meanings). A court does not read into the statute words not readily found there. *Whaley*, 301 Kan. at 196; *Graham*, 284 Kan. at 554; see *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 525, 154 P.3d 494 (2007). When the language is unclear or ambiguous, the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning. *Whaley*, 301 Kan. at 196.

In this case, we must also consider the doctrine of stare decisis because our prior caselaw interpreting the statutory provision is at issue. This doctrine instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised. *Rhoten v. Dickson*, 290 Kan. 92, 112, 223 P.3d 786 (2010). But the doctrine is not unyielding. A court is not "inexorably bound by its own precedent." It can overrule prior caselaw when: (1) it is clearly convinced a rule of law established in its earlier cases was originally erroneous or is no longer sound because of changing conditions and (2) more good than harm will come by departing from precedent. 290 Kan. at 112.

In this instance, Triplett argues the *Dickens* court erroneously interpreted the statute and that subsequent caselaw has carried the error forward. This argument has been made to the Court of Appeals before. See *Jones v. Securitas Sec. Services*, No. 105,414,

7

2011 WL 6311105, at \*3 (Kan. App. 2011) (unpublished opinion) (rejecting argument that *Dickens* should be reconsidered in light of trend of plain language statutory interpretation applied to Workers Compensation Act by Kansas Supreme Court).

In Hoesli's case, the panel acknowledged the plain language of K.S.A. 2010 Supp. 44-501(h) provides that its setoff provision applies to any individual receiving federal Social Security retirement benefits, irrespective of any other considerations. *Hoesli*, 49 Kan. App. 2d at 1021. But it adhered to the line of Kansas cases stemming from *Dickens* that created an exception to the offset if the worker was already retired and receiving social security retirement benefits at the time of injury. We reconsider *Dickens* now in some detail because it is the root of the problem.

In *Dickens*, the injured worker had retired and then took a job intending to earn only as much as he could without causing a reduction in his social security retirement benefits. He later suffered a work injury for which he obtained workers compensation. But the Board ruled that compensation would be offset by his social security retirement benefits pursuant to K.S.A. 1998 Supp. 44-501(h), which was the then-existing offset statute. 266 Kan. at 1067-68. The *Dickens* court reversed the Board, holding that the statutory offset did not apply under the circumstances. It reasoned that the legislature's intent "governs construction of a statute even though the literal meaning of the words used in the statute is not followed." 266 Kan. at 1071. In doing so, it said it was "not limited to a mere consideration of the language used in the statute." 266 Kan. at 1071.

The problem with *Dickens* is that it ignored the legislature's intent as expressed in the statute's plain language in favor of the court's contrary perception of legislative purpose. In other words, it engaged maxims of statutory construction without discerning any uncertainty in the text. See *State v. Paul*, 285 Kan. 658, 661-62, 175 P.2d 840 (2008) (court resorts to maxims of construction when statute is ambiguous, *i.e.*, contains

8

language of doubtful or conflicting meaning and leaves uncertainty as to which of multiple meanings is proper).

Guided by this distorting light, the *Dickens* court determined that the offset was enacted "to prevent duplication of wage-loss benefits." 266 Kan. at 1071. It then observed that Kansas' Workers Compensation Act "has traditionally been viewed as '"one unit in an overall system of wage loss protection, rather than something resembling a recovery in tort. . . . [T]he conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed."'" 266 Kan. at 1070 (quoting *Baker v. List and Clark Construction Co.*, 222 Kan. 127, 130, 563 P.2d 431 [1977]). The components of that system include workers compensation, unemployment compensation, and social security. See 14 Larson's Worker's Compensation Law § 157.01 (2015).

The *Dickens* court then reasoned that applying the offset under the facts of the case would conflict with the legislature's intent to prevent the duplication of benefits because the claimant's social security retirement benefits and workers compensation benefits were not duplicative. A worker, the court reasoned, suffers a "second wage loss" when he or she is injured while working to supplement social security retirement benefits. 266 Kan. 1071.

No subsequent decision by this court has applied *Dickens* to relieve a workers compensation claimant from the offset; but shortly after *Dickens*, this court held the offset *did* apply to an injured worker whose social security disability benefits were involuntarily converted to social security retirement benefits when the claimant had reached retirement age. See *Wishon v. Cossman*, 268 Kan. 99, 991 P.2d 415 (1999). In that case, the worker had been simultaneously receiving social security disability and workers compensation benefits prior to the conversion. The claimant argued he should be excluded from the offset under *Dickens* because he did not choose to retire but rather was

9

forced to receive social security retirements benefits because he was receiving disability benefits when he reached retirement age. 268 Kan. at 107.

The *Wishon* court disagreed, reasoning that a worker who retires was no longer suffering wage loss because of injury but because of retirement—regardless of whether the retirement was forced or voluntary. 268 Kan. at 107. And because the claimant was receiving social security retirement benefits, the *Wishon* court concluded, "the plain language of K.S.A. 44-501(h) require[d] that his workers compensation award be reduced by his social security payments." 268 Kan. at 108. The apparently contradictory holdings in *Dickens* and *Wishon* have never been reconciled by this court.

But a handful of Court of Appeals decisions have grappled with *Dickens*. The most significant is *McIntosh v. Sedgwick County*, 32 Kan. App. 2d 889, 897, 91 P.3d 545 (2004). In that case, the panel held the offset applied when a claimant continued full time employment after he began receiving social security retirement benefits and was subsequently injured before retiring. To reach that conclusion, the panel noted the caselaw applying K.S.A. 44-501(h) demonstrated the offset was triggered when a claimant was injured prior to retirement but not when the claimant retired prior to injury. And because the claimant in *McIntosh* was injured prior to his retirement, the court concluded the offset applied. 32 Kan. App. 2d at 897-98.

The Court of Appeals has addressed similar issues numerous times over the past several years and reached different outcomes depending on whether the injured worker proved he or she was both "retired" and receiving social security retirement benefits at the time of injury. See *Farley v. Above Par Transportation*, 50 Kan. App. 2d 866, 877, 334 P.3d 883 (Kan. App. 2014) (offset applied because there was insufficient evidence that the claimant, who was receiving social security retirement benefits at time of injury, had retired and returned to work before injury); *Morales v. Wal-Mart*, No. 107,526, 2013

10

WL 1010438, at *5 (Kan. App. 2013) (unpublished opinion) (offset applied when employee was injured after she began receiving social security retirement benefits because there was no evidence employee was retired and working to supplement social security income); *Jones*, 2011 WL 6311105, at *3 (offset not applicable when claimant received social security retirement benefits before reentering workforce to supplement social security income); *Anderson v. Blue Ribbon Farm and Home*, No. 97,618, 2007 WL 2301949, at *2 (Kan. App. 2007) (offset applied because employee had not retired by terminating his full-time employment and resuming work to supplement social security retirement benefits at time of injury); *Bale v. Hutchinson Hosp.*, No. 95,749, 2007 WL 1529679, at *4 (Kan. App. 2007) (unpublished opinion) (offset applied because of insufficient evidence that claimant, who was injured after returning to work at age 68, was receiving social security retirement benefits prior to such time).

The panel's decision in Hoesli's case represents an extension of *Dickens* and *McIntosh* because Hoesli was receiving social security retirement benefits but had not yet retired from his employment. Compare *Hoesli*, 49 Kan. App. 2d at 1023, with *McIntosh*, 32 Kan. App. 2d 889, 897 (offset applied on similar facts); see also *Farley*, 50 Kan. App. 2d at 877 (same). The panel acknowledged this addition to the fact pattern. *Hoesli*, 49 Kan. App. 2d at 1019-20.

The *Hoesli* court's rationale is straightforward. First, it observed that under the current version of the Social Security Act individuals may simultaneously receive social security retirement benefits and earn unlimited wages. Then, it concluded Hoesli's workers compensation benefits and social security benefits were not "duplicative" since the wages the workers compensation replaced and Hoesli's social security benefits were "two separate, distinct and independent revenue streams, that would have continued for the foreseeable future, but for the work-related injury." 49 Kan. App. 2d at 1021.

11

Like the *Dickens* court, the *Hoesli* panel did not rely on the plain language of K.S.A. 2010 Supp. 44-501(h), rationalizing that "legislative intent also plays a key role in questions of statutory construction, and our Kansas appellate courts have considered the intent behind our Kansas workers compensation statutes many times." 49 Kan. App. 2d at 1022. The panel was clearly debating whether *Dickens* remained good law, and it concluded that "[r]ecent opinions by our Kansas Supreme Court indicate that the *Dickens* exception continues to be good law . . . ." 49 Kan. App. 2d at 1022 (citing *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, 285-86, 241 P.3d 15 (2010).

After careful review of our caselaw, we conclude that *Dickens* and its progeny improperly give effect to a perceived legislative purpose underlying K.S.A. 2010 Supp. 44-501(h) that is contrary to the statutory text's clearly expressed meaning:  to offset *all* workers compensation payments by the amount of social security retirement benefits the claimant receives. Moreover, these cases miss the mark when they conclude that applying the statute when benefits are not duplicative conflicts with that purpose. See *Dickens*, 266 Kan. at 1071 (statute's application would be "contrary to the intent of K.S.A. 1998 Supp. 44-501[h]"). The most that can be concluded is that the statute, as written, affects more claimants than may be necessary to carry out the legislative purpose; but that does not change the plain meaning of the statutory text. For these reasons, we hold that the doctrine of stare decisis must yield to maintain consistency with our statutory interpretation caselaw.

Hoesli argues we must adopt the panel's construction of K.S.A. 2010 Supp. 44-501(h) because it is "the only way to interpret the statute so that it withstands the constitutional challenge based on equal protection." But Hoesli is confusing this court's duty to construe a statute as constitutionally valid when it is faced with more than one reasonable interpretation and only one interpretation is constitutional. See *Boatright v.*

*Kansas Racing Comm'n*, 251 Kan. 240, 834 P.2d 368 (1992). That is not the situation here because only one reasonable meaning can be gleaned from the statutory text.

Moreover, the court's duty to give effect to the plain language of an unambiguous statute is not diluted just because that effect renders the statute unconstitutional. See *Brownsburg Area Patrons Affecting Change v. Baldwin*, 714 N.E.2d 135, 139 (Ind. 1999) ("If a statute is unambiguous, then 'courts must apply the plain language . . . despite perhaps strong policy or constitutional reasons to construe the statute in some other way.'"); *State v. Thompson*, 836 N.W.2d 470, 484 (Iowa 2013) ("[I]t is 'our mandate to construe statutes in a fashion to avoid a constitutional infirmity where possible.' [Citation omitted] But, we cannot use the doctrine of constitutional avoidance to change the meaning of unambiguous statutory language."); see also *Clark v. Martinez*, 543 U.S. 371, 381, 125 S.Ct. 716, 160 L. Ed. 2d 734 (2005) (canon of constitutional avoidance is "tool for choosing between competing plausible interpretations of a statutory text" to avoid decision of constitutional questions). But see *Rich v. Department of Marine Resources*, 994 A.2d 815, 818 (Me. 2010) ("Our responsibility is to effectuate the plain language of the statute unless doing so results in a constitutional violation.").

Having held that K.S.A. 2010 Supp. 44-501(h) unambiguously provides that any workers compensation payments are subject to the offset when the injured worker is simultaneously receiving social security retirement benefits, we will confront Hoesli's constitutional challenge.

K.S.A. 2010 Supp. 44-501(h) Comports with Equal Protection

Hoesli claimed in the Court of Appeals that K.S.A. 2010 Supp. 44-501(h) would deny him equal protection of the laws contrary to the Fourteenth Amendment of the United States Constitution and Section 1 of the Kansas Constitution Bill of Rights if the

13

panel affirmed the Board's order offsetting his workers compensation with his social security retirement benefits. The panel did not reach this claim because it ruled in Hoesli's favor. But having reversed the panel on its statutory interpretation, we exercise our discretion to consider the constitutional claim since this is a civil case and that issue was fully briefed to the panel. See Supreme Court Rule 8.03(h)(1) (2014 Kan. Ct. R. Annot. 77). The question is whether the distinction drawn by K.S.A. 2010 Supp. 44-501 between claimants who receive retirement benefits and all other claimants denies the retirement-receiving claimants equal protection.

*Standard of Review*

Whether a statute violates equal protection is a question of law subject to de novo review. *Barrett ex rel. Barrett v. U.S.D. 259*, 272 Kan. 250, 255, 32 P.3d 1156 (2001); see *State v. Cheeks*, 298 Kan. 1, 4, 310 P.3d 346 (2013) (whether statute violates constitution is question of law); *Miller v. Johnson*, 295 Kan. 636, 646-47, 289 P.3d 1098 (2012) (same). The court presumes statutes are constitutional, and all doubts are resolved in favor of their validity. *Miller*, 295 Kan. at 646; *Barrett*, 272 Kan. at 255. The burden is on the party attacking the statute to demonstrate it violates equal protection. 272 Kan. at 256; see also *In re Weisgerber*, 285 Kan. 98, 102, 169 P.3d 321 (2007) (burden is on party challenging constitutionality).

*Discussion*

Equal protection claims regarding classifications within economic and social welfare legislation that are not drawn along suspect lines, such as race or gender, are analyzed using a rational basis test. See *Fitzgerald v. Racing Ass'n of Central Iowa*, 539 U.S. 103, 107, 123 S. Ct. 2156, 156 L. Ed. 2d 97 (2003); *Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S. Ct. 1074, 67 L. Ed. 2d 186 (1981). Under this test, a law will not be

invalidated so long as the classification is "rationally related to legitimate government objectives." *Schweiker*, 450 U.S. at 230.

"Insofar as the objective is concerned, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. The legislature's purpose in creating the classification need not be established." *Barrett*, 272 Kan. at 256 (quoting *State v. Mueller*, 271 Kan. 897, Syl. ¶ 8, 27 P.3d 884 [2001]); see *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 [1970]). A law "might predominantly serve one general objective . . . while containing subsidiary provisions that seek to achieve other desirable (perhaps even contrary) ends as well, thereby producing a law that balances objectives but still serves the general objective when seen as a whole." *Fitzgerald*, 539 U.S. at 108. All that is required is that "there is a plausible policy reason for the classification, [and that] the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker." 539 U.S. at 107.

But the relationship between the classification and the legislative objective it serves need not be narrowly tailored to the objective. A rational connection between the two will suffice."'[R]elevance is the only relationship required between the classification and the objective.'" *Barrett*, 272 Kan. at 256 (quoting *State v. Mueller*, 271 Kan. 897, Syl. ¶ 8, 27 P.3d 884 [2001]). This standard is met so long as "the statute produces effects that advance, rather than retard or have no bearing on, the attainment of the objective." 272 Kan. at 256.

The classification at issue is based upon the receipt of retirement benefits, including social security. Under the statute, injured workers who do not receive such benefits are entitled to the full amount of workers compensation recoverable under the

act, while those who do receive retirement benefits collect less workers compensation than they would otherwise be entitled to. See K.S.A. 2010 Supp. 44-501(h).

This court has previously held this classification does not violate equal protection because it was determined to be rationally related to the legitimate government objective of preventing injured workers from receiving duplicative wage-loss benefits for single periods of wage loss. *Injured Workers*, 262 Kan. at 870, 872. Hoesli argues *Injured Workers* was decided before the 2000 amendments to the Social Security Act, which eliminated the earnings test that reduced the retirement benefits paid to certain wage-earning recipients aged 65 to 69. This earnings test could be viewed as a need-based adjustment to social security retirement benefits. Based on this change in the law, Hoesli claims *Injured Workers'* rationale is now suspect.

But even after the 2000 amendments, social security retirement benefits still maintain their character as wage-loss benefits. The social security retirement system was enacted "to provide workers and their families with basic protection against hardships created by the loss of earnings due to . . . old age." See *Mathews v. De Castro*, 429 U.S. 181, 185-86, 97 S. Ct. 431, 50 L. Ed. 2d 389 (1976). And the 2000 amendments merely "reduced from 70 to 65 the age at which an earnings test would not be applied to reduce social security benefits." *McDowell v. Jackson Energy RECC*, 84 S.W.3d 71, 77 (Ky. 2002); see also *Rayhall v. Akim Co., Inc.*, 263 Conn. 328, 819 A.2d 803 (2003) (holding in post-amendment case that offsetting social security retirement benefits against permanent total disability payments rationally related to reducing wage-replacement benefits for retired workers).

Even though the statutory classification may extend further than necessary to achieve its purpose by reaching workers compensation payments owed for injuries incurred during employment undertaken to supplement social security, it does not violate

equal protection in doing so. See *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 316, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (holding mandatory retirement age for uniformed state police rationally related to legitimate goal of protecting public by assuring police are physically prepared and noting no indication chosen age limit excluded so few officers that were in fact unqualified to render the age limit wholly unrelated to statutory objective; state need not adopt more precise, individualized method of assuring physical fitness). As explained in 14 Larson's Workers' Compensation Law § 157.01 (2015):

>      "Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a worker undergoes a period of wage loss due to all three conditions, it does not follow that he or she should receive three sets of benefits simultaneously and thereby recover more than his or her actual wage. The worker is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workers' compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits."

We hold that social security retirement benefits under the Social Security Act did not lose their essential character as benefits to protect recipients from the loss of wages due to advanced age simply because the 2000 amendments permit those who qualify for the benefits on account of age to receive them, in full, while still earning wage income. And since the purpose of K.S.A. 2010 Supp. 44-501(h) is to avoid duplication of wage-loss benefits, and because the social security retirement offset furthers that purpose, the statute satisfies the rational basis test. It does not violate equal protection simply because

its reach is, in some cases, greater than the purpose served. *Injured Workers*, 262 Kan. 840, remains good law.

Accordingly, we reverse the decision of the Court of Appeals and affirm the Board's decision as explained.