(91 P.3d 545)
No. 91,097

WILLIE MCINTOSH, *Claimant/Appellee*, v. SEDGWICK COUNTY, *Respondent/Appellant.*

Opinion filed June 11, 2004.

*Richard J. Liby*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellant.

*Steven R. Wilson*, of Wilson, Lee, Gurney, Carmichael & Hess, of Wichita, for appellee.

Before HILL, P.J., JOHNSON and MCANANY, JJ.

MCANANY, J.: Sedgwick County (County) appeals the decision of the Workers Compensation Appeals Board (Board) affirming the administrative law judge's conclusion that the County is not entitled to an offset for social security retirement benefits pursuant to K.S.A. 44-501(h).

Willie McIntosh worked as a security officer for Sedgwick County. In the spring of 1999, at about the time of his 65th birthday, McIntosh began receiving social security retirement benefits of $973 per month; but he continued to work full-time for the

County. He planned to retire effective August 1, 1999. However, in June 1999, he suffered an on-the-job injury for which he made a workers compensation claim.

The administrative law judge concluded that McIntosh was entitled to an award of permanent and total disability and that the County was not entitled to an offset for social security retirement benefits pursuant to K.S.A. 44-501(h). The Board affirmed the award, concluding that *Dickens v. Pizza Co.*, 266 Kan. 1066, 974 P.2d 601 (1999), renders K.S.A. 44-501(h) inapplicable in this case. The County appeals, arguing that *Dickens* is distinguishable and that it is entitled to an offset for the social security retirement benefits McIntosh receives. We conclude that the offset provisions of K.S.A. 44-501(h) apply and, accordingly, reverse the Board's decision and remand the case for further proceedings consistent with this opinion.

We have unlimited review of decisions of the Workers Compensation Appeals Board involving the interpretation of statutory provisions. While we give deference to the Board's interpretation of the law, we grant relief for erroneous legal interpretations or applications. *Pruter v. Larned State Hospital,* 271 Kan. 865, 868, 26 P.3d 666 (2001).

The sole issue is the interpretation of K.S.A. 44-501(h), which states:

"If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

In interpreting a statute, we must determine legislative intent whenever possible. To accomplish this, a brief historical overview will be helpful. K.S.A. 44-501(h) was preceded by K.S.A. 1974

Supp. 44-510f(c), which was enacted in 1974 as part of a comprehensive revision of the workmen's compensation laws. It provided:

"An employee shall not be entitled to compensation benefits for permanent total disability, temporary total disability or partial disability, under the workmen's compensation act, from and after the date when he shall receive federal old age social security benefits, reduced or unreduced."

This statute dealt with the duplication that arises from receiving workers compensation benefits and social security retirement benefits. A companion provision, found in K.S.A. 1974 Supp. 44-510b(j) and enacted at the same time, dealt with the duplication of benefits in instances when a decedent's surviving dependents received social security death benefits while also receiving workers compensation benefits.

In *Baker v. List and Clark Construction Co.*, 222 Kan. 127, 128, 563 P.2d 431 (1977), the Supreme Court considered K.S.A. 1975 Supp. 44-510b(j) which deals with duplicative social security death benefits, upheld its constitutionality, and characterized it as

"a 'set-off' provision which provides that workmen's compensation benefits due the dependents of a deceased employee shall be reduced by a specified formula if such dependents are also being paid under the Social Security Act because of the death of the employee."

While *Baker* deals with death benefits rather than retirement benefits, the common rationale for these two provisions is instructive. The court noted that the statute is consistent with the view of workers compensation described in 4 A. Larson, The Law of Workmen's Compensation, Sec. 97.00 (1976):

" 'Once it is recognized that workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed. Since most social legislation in the United States has appeared in unrelated fragments, lack of coordination resulting in cumulation of benefits is quite common; but newer legislation, including the Social Security compensation offset provision, is more carefully drawn to prevent this result.' [Citation omitted.]

. . . .

" 'Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative

fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workmen's compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits.' [Citation omitted.]" 222 Kan. at 130-31.

The court observed that noteworthy in the legislative history is the fact that the Special Committee on Employer-Employee Relations, which conducted a general review of Kansas workmen's compensation law, gave specific consideration to the recommendations of the President's National Commission on State Workmen's Compensation Laws, which provided:

"We recommend that workmen's compensation death benefits be reduced by the amount of any payments received from Social Security by the deceased worker's family." The Report of the National Commission on State Workmen's Compensation Laws 73 (July, 1972).

The Commission concluded:

" 'This offset provision, in conjunction with our other recommendations for death benefits, would provide substantial protection at a lower cost to the employer than if workmen's compensation benefits were to duplicate Social Security benefits. More important, the offset would add equity to the workmen's compensation system because two families would not receive different benefits merely because only one was eligible for the Social Security benefits. Moreover, all surviving families would be assured of a continuing income of the same general magnitude, rather than being subject to wide swings in family income resulting from the in-and-out characteristics of Social Security benefits.' [Citation omitted.]" 222 Kan. at 131-32.

The court in *Baker* concluded that "[w]hen the system of wage-loss protection is viewed as a whole, avoiding duplication or overlapping of benefits appears to be a reasonable legislative objective." 222 Kan. at 132.

One year after *Baker*, this court considered the companion legislation relating to social security retirement benefits, K.S.A. 1976 Supp. 44-510f(c), in *Boyd v. Barton Transfer & Storage*, 2 Kan.

App. 2d 425, 580 P.2d 1366, *rev. denied* 225 Kan. 843 (1978). Boyd was 62 years old and receiving $240 per month in social security retirement benefits at the time of his post-retirement, work-related injury. His average weekly wage was only $95 because he limited his work to an amount that would supplement but not reduce his social security retirement benefit. He was denied workers compensation benefits under K.S.A. 1976 Supp. 44-510f(c). The court observed:

"[A] schedule has been established which limits the number of weeks that wage replacement (expressed in terms of 66⅔ percent of the average gross weekly wage) may be received for particular permanent partial disabilities. K.S.A. 1976 Supp. (now 1977 Supp.) 44-510d. Should an injured worker have only a part of the specified number of weeks of employment left before retirement, workmen's compensation would provide the wage-loss benefit up to the time social security comes into effect. As long as workmen's compensation is not viewed as a substitute for tort recovery but as wage-loss protection only, the cutoff of workmen's compensation at the time of retirement and initial receipt of old age social security benefits would be reasonable. The worker would suffer only one wage loss, but continued workmen's compensation after retirement would duplicate the wage-loss replacement of the old age social security benefits which begin at that time." 2 Kan. App. 2d at 428.

Here, Boyd was already retired and was supplementing his retirement benefits through part-time work. Finding that the statute did not apply to Boyd and those similarly situated, the court concluded:

"Should K.S.A. 1976 Supp. 44-510f(c) be applicable to such workers, it would totally preclude any replacement of the wages which they are entitled to earn over and above old age social security benefits. As such, it would not prevent 'duplication' but would operate to preclude the wage replacement which it was the intent of the legislature to provide through the Workmen's Compensation Act." 2 Kan. App. 2d at 428.

The following year, this court decided *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan. App. 2d 648, 599 P.2d 1031 (1979), *aff'd* 227 Kan. 645, 608 P.2d 1356 (1980). K.S.A. 1974 Supp. 44-510f(c) was again at issue in *Brown*. Brown received a workers compensation award 16 months before he began receiving social security retirement benefits at age 65. The Workers Compensation Fund sought to terminate Brown's workers compensation benefits under

K.S.A. 1974 Supp. 44-510f(c). The Court of Appeals affirmed the termination of benefits, noting:

"When viewed as part of a wage-loss compensation program, the termination of benefits under 44-510f(c), like 44-510b(j), does not really penalize the injured worker. By preventing a duplication of benefits under the Workmen's Compensation Act and the Social Security Act, the provision places the worker in the same position as fellow workers who have retired and are drawing old age social security benefits. At that point he is no longer subject to wage loss. It is only his disability benefits that are affected. After retirement the wage loss experienced by a worker is not caused by injury, but by retirement. A worker could retain workmen's compensation benefits by staying in the labor market and not retiring." 3 Kan. App. 2d at 654.

K.S.A. 1976 Supp. 44-510f(c) and K.S.A. 1976 Supp. 44-510b(j) were repealed in 1977. In 1993 K.S.A. 1976 Supp. 44-510f(c) was replaced by the current 44-501(h), which is quoted above. The impetus for this legislation was the same concern that prompted the prior legislation, 44-510f(c) and 44-510b(j): the reduction of workers compensation insurance premiums by, among other things, preventing duplication of wage-loss benefits. Whereas the old law created a total bar to workers compensation benefits for one receiving social security retirement benefits, the new law provided for a dollar-for-dollar reduction in benefits.

In 1997, this court decided *Bohanan v. U.S.D. No. 260*, 24 Kan. App. 2d 362, 947 P.2d 440 (1997), which upheld the constitutionality of K.S.A. 1996 Supp. 44-501(h). One month after *Bohanan*, the Supreme Court similarly addressed the constitutionality issue in *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 942 P.2d 591 (1997). In upholding the constitutionality of K.S.A. 44-501(h), the court affirmed the decisions in *Baker* and *Brown* under the earlier legislation and stated:

"Subsection (h) allows an offset against workers compensation benefits to which an injured worker would otherwise be entitled for each dollar of social security retirement benefits received by the injured worker, as long as the workers compensation benefits do not dip below the workers compensation benefits payable for the employee's percentage of functional impairment." 262 Kan. at 865.

The following year, this court decided *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 975 P.2d 807 (1998). Gadberry suffered

a job-related back injury in 1994 and was discharged later that year. She applied for and obtained retirement and social security disability benefits. Her employer was permitted to offset her retirement income in calculating workers compensation benefits. 25 Kan. App. 2d at 807.

One year later, the Supreme Court decided *Dickens*. *Dickens* presents facts similar to those in the earlier *Boyd* case decided by this court. Dickens retired at age 64 and supplemented his social security retirement benefit with part-time work for Pizza Hut. Eight years into his Pizza Hut job, he suffered a work-related injury for which he sought workers compensation benefits. Pursuant to K.S.A. 44-501(h), the Board reduced the amount of his workers compensation benefits by the amount of his social security retirement benefits. On appeal, the court relied upon the reasoning applied in *Boyd*. In reversing the Board's reduction of benefits, the court observed:

"The *Boyd* court was concerned, as we are here, with disparate treatment of individuals such as Dickens, seeking to supplement social security income, compared to other social security beneficiaries.

. . . .

"The *Boyd* court recognized that issues of wage-loss duplication are not at issue in the retired income earner situation. *Boyd* said: '[W]orkers such as the plaintiff here, who are already retired and receiving social security old age benefits before starting work on a part-time job to supplement those benefits, suffer a second wage loss when they are injured in the course of their employment.' 2 Kan. App. 2d at 428. The *Boyd* analysis is sound." 266 Kan. at 1071.

Several months following *Dickens*, this court decided *Green v. City of Wichita*, 26 Kan. App. 2d 53, 977 P.2d 283 (1999). Green, a firefighter, suffered a work-related back injury at age 40. Upon return to work he was told to fill out his retirement papers. Green had an age-based retirement plan and a disability benefit plan. He also applied for workers compensation benefits. Contrary to the City's position, the Board did not apply K.S.A. 44-501(h) to reduce Green's workers compensation benefits by the amount of his retirement benefits. The issue on appeal was whether the benefits to Green were in the nature of a traditional retirement benefit or a disability benefit. In considering whether Green received a tradi-

tional retirement benefit, the court noted that "Black's Law Dictionary defines 'retire' as '[t]o terminate employment or service upon reaching retirement age.' " 26 Kan. App. 2d at 56. The court concluded that the substance of Green's benefits from the City was disability assistance rather than retirement benefits for which an offset under 44-501(h) would apply. 26 Kan. App. 2d at 57.

A month after *Green*, the Supreme Court decided *Treaster v. Dillon Companies, Inc.*, 267 Kan. 610, 987 P.2d 325 (1999). The central issue was the effective date of Treaster's injury, since if it was after the effective date of K.S.A. 44-501(h), the setoff provisions would reduce her workers compensation benefits due to her receipt of social security retirement benefits. The court found that her injury occurred on August 2, 1993, after the July 1, 1993, effective date of 44-501(h). She stopped working on May 28, 1994, and was on disability status for the remainder of the year. She retired on January 1, 1995, and began receiving retirement benefits. Accordingly, Dillon was entitled to offset the retirement benefits she began receiving in January 1995 against her workers compensation benefits. 267 Kan. at 625.

In November 1999, the Supreme Court decided *Wishon v. Cossman*, 268 Kan. 99, 991 P.2d 415 (1999). Wishon received workers compensation benefits as well as social security disability payments. Upon his reaching age 65, the disability payments were converted to retirement payments pursuant to 42 U.S.C. § 402(a)(3)(A) (1994). The Board reduced Wishon's workers compensation benefits by the amount of his social security retirement benefits in accordance with K.S.A. 1998 Supp. 44-501(h). Wishon argued that since he was forced to retire due to injury rather than voluntarily choosing to retire, the 44-501(h) offset should not apply. He also argued that the court should adopt the approach used and conclusion reached in *Dickens*. In rejecting both arguments, the court noted that at age 65 the payments to Wishon changed to retirement payments because of his age. Thus, his retirement benefits were based on his age rather than his disability, and "the plain language of K.S.A. 44-501(h) requires that his workers compensation award be reduced by his social security payments." 268 Kan. at 106-08.

Returning to the case at hand, McIntosh began receiving social security benefits at about the time he reached age 65 in April. He intended to retire in August. In the meantime, he continued to work *full-time* for the County doing the same job as before. He suffered an injury in June, before his anticipated retirement date. His circumstances were markedly different from those in *Dickens*, where the claimant retired, began collecting social security retirement benefits, and years later suffered a work-related injury. McIntosh was not retired at the time of his injury. His income from the County at the time of his injury was not post-retirement income used to supplement his retirement income. As noted earlier in *Green*, to retire is " 'to terminate employment or service upon reaching retirement age.' " *Green*, 26 Kan. App. 2d at 56. McIntosh terminated neither his employment nor his services before his job-related accident.

The cases show two consistent patterns: (1) injury, then retirement: no duplication of benefits allowed (*Gadberry, Brown, Treaster,* and *Wishon*); and (2) retirement, then injury: multiple benefits allowed (*Boyd* and *Dickens*). McIntosh falls into the former category. He suffered his work-related injury before retirement. Unlike in *Dickens*, McIntosh suffered only one wage loss: the loss of wages for his full-time employment that predated the injury and his retirement. Although McIntosh began receiving social security benefits before the actual date of his retirement, they were intended to compensate him for the wage loss that would result from his eventual retirement.

McIntosh argues that his work for the County after receiving social security benefits was intended to supplement his social security income once he retired in August. He asserts that he would have continued working for many years but for his pre-retirement injury. McIntosh's frustration is understandable. However, it is clear that in enacting K.S.A. 44-501(h), the legislature intended to prevent wage-loss duplication. In instances in which the work-related injury predates the actual date of retirement, the appellate courts have consistently held that social security retirement benefits are designed to restore a portion of an employee's wages lost due to age and, therefore, duplicate workers compensation benefits

which are designed to restore a portion of an employee's wages lost due to injury. Accordingly, the offset provisions of K.S.A. 44-501(h) apply to McIntosh.

Finally, in view of our holding in this case, the County's argument that the Board's interpretation of K.S.A. 44-501(h) violates the Equal Protection Clause is moot and we need not consider it.

Reversed and remanded for further proceedings consistent with this opinion.