No. 110,507

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHELBY FARLEY,
*Appellant*,

v.

ABOVE PAR TRANSPORTATION
and
NATIONAL INTERSTATE INS. CO.,
*Appellant*.

SYLLABUS BY THE COURT

1.

If a person who has never retired but who is receiving old-age Social Security benefits suffers compensable injuries, the person's workers compensation award for those injuries is subject to the Social Security offset provisions of K.S.A. 2009 Supp. 44-501(h).

2.

If a person receiving old-age Social Security benefits who has retired and then has returned to work to supplement those benefits suffers compensable injuries, the person's workers compensation award for those injuries is not subject to the Social Security offset provisions of K.S.A. 2009 Supp. 44-501(h).

1

3.

Whether a person receiving old-age Social Security benefits had retired and then returned to work is a question of fact.

Appeal from Workers Compensation Board. Opinion filed September 5, 2014. Affirmed.

*William L. Phalen*, of Pittsburg, for appellant.

*D'Ambra M. Howard* and *Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and JOHNSON, S.J.

JOHNSON, J.: Shelby Farley suffered work-related injuries while working for Above Par Transportation. Farley was receiving old-age Social Security benefits at the time he was injured. The Workers Compensation Board (Board) awarded Farley a substantial work disability. However, because the Board found that Farley had not retired before his accident occurred, it reduced Farley's award by the amount of his Social Security benefits pursuant to K.S.A. 2009 Supp. 44-501(h). Farley appeals, contending that the Board "overlooked" his evidence that he had in fact retired and that it erroneously applied the statutory offset. We affirm the Board's decision.

FACTUAL AND PROCEDURAL BACKGROUND

In this action for judicial review, Farley contends that the Board overlooked the fact that he had retired and then returned to work before he suffered his work-related injuries. As we give the history of the case in the following, we have specifically set out what evidence we could find in the record that relates to that contention.

2

Farley was born March 14, 1945. At age 64, he began working for Above Par Transportation (Above Par) as an over-the-road truck driver. His first day on the job was October 20, 2009. On October 29, 2009, he delivered a load of 900-pound bundles of steel pipe to an Amish community in Wisconsin. The customers were responsible for unloading the pipe. They tied a team of horses to the pipe to drag it from the trailer. In the process, the horses became spooked and they took off, causing the bundle they were pulling to swing around and strike Farley. He suffered injuries to his left leg and back. He timely filed his claim for workers compensation benefits. After a lengthy period of treatment, he finally reached the point of maximum medical improvement.

On May 3, 2012, 6 days before the regular hearing, Karen Terrill, a rehabilitation consultant retained by Farley, testified at her deposition. Her written report was admitted into evidence. The report included a 15-year work history Terrill prepared based only on information Farley gave her. The report reflected a gap in Farley's employment from May 2008 to October 2009, when he started working for Above Par. It also indicated that Farley had attempted to obtain Social Security disability benefits, but his application for benefits was denied in 2008. The report listed the job tasks that were essential to the work Farley had performed during that 15-year period. The parties' attorneys examined Terrill with a focus on her breakdown of Farley's job tasks. On his redirect examination of Terrill, Farley's attorney asked her about the Social Security benefits Farley was receiving:

> "Q: It's your understanding that he had been receiving social security and had continued
> to work in the open labor market, correct?
> "A: That is correct."

That is the full extent of Terrill's testimony regarding Farley's Social Security benefits. She did not state or report that Farley had ever told her he had retired but then came out of retirement to work for Above Par. Neither party asked Terrill any questions

3

about Farley's employment gap she noted in her report, or why Farley had applied for Social Security disability benefits, or why the claim was rejected in 2008 during the employment gap.

On May 9, 2012, the administrative law judge (ALJ) conducted the regular hearing in the case. At the outset, the ALJ asked the parties to state their stipulations and identify the issues. Above Par indicated that one of the issues involved its potential credit for Social Security retirement benefits against any workers compensation award to Farley. Farley then testified, giving a detailed description of his accident, injuries, treatments, and resulting disabilities. Toward the end of the direct examination, Farley and his attorney had the following exchange regarding his Social Security benefits:

"Q: At the time of the accident you were 64 years old. Were you drawing Social Security retirement benefits?
"A: Yes.
"Q: So you were drawing Social Security retirement benefits and working?
"A: Yes.
"Q: Was it, what were your intentions regarding work for the rest of your life?
"A: I wanted to work the rest of my life.
"Q: So you intended to draw Social Security retirement and work as long as you could?
"A: Yes, I did."

Above Par cross-examined Farley briefly about his Social Security benefits. Farley testified that he began drawing his benefits in April 2009. He said he received $776 per month until January 2012, when his benefits were increased by 3%. Neither attorney questioned Farley about why he decided to take his old-age Social Security when he did, why he applied for Social Security disability, why he was rejected, or why he was out of work before he took the job with Above Par. Farley did not testify that he had retired or say that he had decided to come out of retirement to work for Above Par.

4

In workers compensation cases, each party ultimately provides the ALJ a submission letter. That submission generally contains that party's summary of the evidence and its arguments on findings of fact and conclusions of law. Farley's submission letter does not mention retirement. It refers to Social Security once, stating: "At the time of the accident, the Claimant was drawing Social Security retirement benefits and intended to work the rest of his life." Above Par's submission letter contended that the clear language of K.S.A. 2009 Supp. 44-501(h) entitled it to a Social Security offset against any award the ALJ might make to Farley. It inveighed against the Supreme Court for recognizing an exception to the statute in *Dickens v. Pizza Co.*, 266 Kan. 1066, 974 P.2d 601 (1999) (holding that the offset did not apply to compensation awarded to a worker who had retired but later returned to part-time work to supplement the worker's old-age Social Security benefits). It contended that *Dickens* was bad, judge-made law.

The ALJ awarded Farley a 72.5% permanent partial general work disability which, based on an average weekly wage of $813.16, entitled Farley to payments for his permanent partial disability of $542.13 per week. The ALJ also found that Farley had never retired, he had just chosen to receive his Social Security benefits while he continued to work. The ALJ determined that, since Farley had not retired before his accident, the offset for Social Security was mandated by K.S.A. 2009 Supp. 44-501(h) and the decision in *McIntosh v. Sedgwick County*, 32 Kan. App. 2d 889, Syl. ¶ 3, 91 P.3d 545, *rev. denied* 278 Kan. 846 (2004) (holding that the offset applied to compensation awarded to a worker who was drawing Social Security at the time of the injury but had not retired before the injury). Applying that offset, the ALJ reduced Farley's weekly workers compensation payment by $179.08 per week through December 2011, then by $184.45 per week for payments that came due thereafter.

Above Par sought Board review of the ALJ's award. In its brief, Above Par challenged nearly every aspect of the ALJ's award except for the Social Security offset.

5

Nevertheless, it fully addressed the offset issue with citations to authority and argument that *Dickens* was bad law. Farley responded, arguing that *Dickens* was still good law but that the ALJ had misapplied it. However, Farley did not cite any evidence in the record that contradicted the ALJ's finding that Farley had never retired. The Board modified the award, finding Farley's average weekly wage was $648.25, with an attendant reduction in Farley's weekly compensation rate. Regarding the Social Security offset issue, the Board made this finding of fact: "There is no evidence that claimant has ever retired." The Board affirmed the ALJ's application of the offset to the award, stating:

"Based on the holdings of the *McIntosh* and *Dickens* cases, if a claimant is injured before he or she retires, the employer is entitled to the statutory offset, as an injured employee is not entitled to recover both retirement benefits and workers compensation benefits beyond the value of their functional impairment. [*McIntosh*, 32 Kan. App. 2d at 897-98]. But if an employee retires and then returns to work to supplement his or her income, the offset does not apply, as the employee's receipt of both workers compensation benefits and social security retirement benefits is not duplicative. [Dickens, 266 Kan. at 1071].

"In this claim, claimant did not retire before his accidental injury, nor did he retire after his injury. It was his intention to continue working and receive social security retirement benefits for the rest of his life. Accordingly, the ALJ correctly found that respondent is entitled to the retirement benefit offset."

Farley appeals from Board's application of the Social Security benefits offset to his award.

STANDARDS OF REVIEW

K.S.A. 2009 Supp. 44-556(a) provides that final orders of the Board are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, as amended. On appeal, the party asserting the invalidity of the Board's action has the

6

burden to prove its invalidity. K.S.A. 2013 Supp. 77-621(a)(1). K.S.A. 2013 Supp. 77-621 establishes and restricts the scope of judicial review of an administrative agency's action. Specifically, K.S.A. 2013 Supp. 77-621(c) lists the several circumstances under which this court can grant relief from an order of the Board. Two of those circumstances appear to be relevant here. K.S.A. 2013 Supp. 77-621(c)(4) provides that we can grant Farley relief if we determine that the Board erroneously interpreted or applied the law. K.S.A. 2013 Supp. 77-621(c)(7) provides that we can grant Farley relief if we find that the Board based its order on a determination of fact not supported by substantial evidence in the record as a whole. The term "substantial evidence" refers to "such evidence as a reasonable person might accept as being sufficient to support a conclusion." *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

K.S.A. 2013 Supp. 77-621(d) includes the definition of "record as a whole" and provides in relevant part as follows:

> "(d) For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding . . . . In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

Thus, on review, we cannot reweigh the evidence. We must conduct a limited review of all of the evidence in the agency's record cited by any party, both that which supports and that which detracts from the validity of a factual finding, to determine whether the Board's factual findings are supported by substantial evidence. *Gustin v. Payless ShoeSource, Inc.*, 46 Kan. App. 2d 87, Syl. ¶ 1, 257 P.3d 1277 (2011). If the factual finding is not properly supported, we can reverse a legal conclusion based on that

7

insufficiently supported fact. K.S.A. 2013 Supp. 77-621(c)(7). We have de novo review of the Board's construction and application of a statute. See *Craig v. Val Energy*, *Inc.*, 47 Kan. App. 2d 164, 166, 274 P.3d 650 (2012), *rev. denied* 297 Kan. 1244 (2013).

ANALYSIS

At the time of Farley's accident, K.S.A. 2009 Supp. 44-501(h) provided in relevant part:

> "If the employee is receiving retirement benefits under the federal social security act . . . , any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits . . ., but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

We have referred above to *Dickens* and *McIntosh* because they state the tests that determine whether the offset in K.S.A. 2009 Supp. 44-501(h) should be or should not be applied to an award. The Supreme Court succinctly reiterated those rules, and the wage loss duplication principles on which they are based, in *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, 286, 241 P.3d 15 (2010), are as follows:

> "Applying this provision [K.S.A. 44-501(h)], this court and the Court of Appeals have noted that the purpose of this statutory reduction is to prevent wage loss duplication. *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 872, 942 P.2d 591 (1997); *Lleras v. Via Christi Regional Med. Center*, 37 Kan. App. 2d 580, Syl. ¶ 5, 154 P.3d 1130 (2007); *McIntosh v. Sedgwick County*, 32 Kan. App. 2d 889, 897, 91 P.3d 545, *rev. denied* 278 Kan. 846 (2004). If a claimant is injured before he or she retires, the employer is entitled to the statutory reduction, as an injured employee is not entitled to recover both retirement benefits and workers compensation benefits beyond the value of the functional impairment. *McIntosh*, 32 Kan. App. 2d at 894, 897-98. Conversely, if an employee retires and then returns to work to supplement his or her income, the reduction does not

8

apply, as the employee's receipt of both workers compensation benefits and social security retirement benefits are not duplicative. *Dickens v. Pizza Co.*, 266 Kan. 1066, 1071, 974 P.2d 601 (1999)."

The plain language of the statute appears to require that Farley's Social Security benefits be offset against his workers compensation award. However, if Farley had shown that he had retired, drawn his Social Security, and then returned to work, the *Dickens* exception would apply, and his Social Security would not be offset against his award. The Board specifically found that the *Dickens* exception did not apply because Farley had not retired before his accident.

Farley frames the issue on his appeal in the form of a question: "Did the Board erroneously apply K.S.A. 44-501(h) in finding that the offset provision contained therein applied in this case?" Farley characterizes his challenge to the Board's offset decision as one made under K.S.A. 2013 Supp. 77-621(c)(4). Under that subsection, we can grant Farley relief if we determine that the Board erroneously interpreted or applied the law. For decisions challenged under that subsection, our review is unlimited. See *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009).

On closer inspection, though, we see that Farley's challenge is also directed at the Board's determinative finding of fact that "[t]here is no evidence that claimant has ever retired." K.S.A. 2013 Supp. 77-621(c)(7) and K.S.A. 2013 Supp. 77-621(d) govern our review of factual findings. We conduct a limited review to determine whether the Board based its order on a finding of fact that is not supported by substantial evidence in the record as a whole.

Because Farley challenges both the Board's findings of fact and its legal conclusions, and those challenges are subject to differing analyses, we will consider those challenges separately.

9

*The Board's determinative finding of fact is supported by substantial evidence.*

Farley submits in the Statement of Facts in his brief the following:

> "At the time of his work accident in 2009, the Claimant was 64 years old. He had *terminated his employment* in May of 2008 for a period of time and began drawing social security retirement benefits in April 2009. *When he reentered the workforce* for Respondent in October 2009, he intended to work the rest of his life and draw social security." (Emphasis added.)

Farley cites us to his testimony before the ALJ and to Terrill's report as the sources for these contentions. However, according to the transcript, Farley did not testify that he had terminated his prior employment in May 2008. Terrill's report simply indicates that Farley's prior employment ended at that time, without any indication whether Farley resigned, retired, or was fired. Nor did Farley testify that he was "reentering the workforce" when he took the job with Above Par. He just told the ALJ that he started to work for Above Par in October 2009 and that he had planned to work and draw his Social Security for the rest of his life.

Then, under the Arguments and Authorities section of Farley's brief, he states:

> "In reviewing the line of cases regarding social security retirement benefits set off pursuant to K.S.A. 44-501(h) *it is clear to claimant that an important factor has been overlooked in his case.* Mr. Farley was 64 years old at the time of his accident. His last employment prior to going to work for Respondent had terminated in May, 2008. Claimant was not working and he began to receive social security retirement benefits in April, 2009. *Claimant then decided to come out of retirement and go back to work.* He took a job with Respondent on October 19, 2009 and unfortunately was injured on October 29, 2009." (Emphasis added.)

Above Par correctly points out that Farley did not make these fact claims in his submission letters to the ALJ or to the Board. Above Par maintains that, until this appeal, Farley never alleged that he had retired. But we are directed to consider the agency's record as a whole when reviewing fact findings. Even if Farley's counsel overlooked facts in the record when making his submissions to the ALJ and Board, if those facts are in the record, we should consider them. The Board said in its order that it had "considered the entire record." Likewise, we have reviewed the record as a whole for evidence that either supports or detracts from the Board's finding that Farley had not retired before his accident.

We are satisfied that the Board did not overlook material evidence in making its decision. We have quoted above the full extent of Farley's testimony regarding his Social Security. He never told the ALJ or Terrill he had retired. It appears that the claim of a prior retirement Farley makes now is just counsel's best-case (for Farley) extrapolation from imprecise and unexplained information that Terrill included in her report. Terrill's report tells us four things:  Farley's previous employment ended in May 2008; he was denied Social Security disability in 2008; he began to draw his old-age Social Security before starting to work for Above Par; he intended to work and draw his Social Security for the rest of his life.

Those facts are not necessarily inconsistent with a retirement, but they are not adequate to demonstrate that Farley had ever retired. One could just as easily infer from Terrill's employment gap and related information that Farley became ill in 2008, tried but failed to get disability, drew his old-age Social Security in April 2009 to tide him over until he could get well and get back to work, and then did go back to work for Above Par in October 2009. In spite of Farley's contentions, the information in Terrill's report does not detract from the Board's finding that Farley had not retired.

11

We can find no evidence in the record as a whole that actually supports Farley's new claim that he had retired but then returned to work. We do find evidence in the record indicating that Farley never retired:  he testified that he intended to draw his Social Security and work for the rest of his life. He told Terrill the same thing. If Farley had retired, he could have said so at his regular hearing, but he did not. Farley has failed to sustain his burden of proof under K.S.A. 2013 Supp. 77-621(a)(1) and (c)(7). The Board's finding of fact that Farley had never retired is supported by substantial evidence.

*The Board did not erroneously interpret or apply the law*

Still, Farley maintains that the Board erroneously applied the law to the facts. Our review of that challenge is unlimited. He relies on *Jones v. Securitas Security Services*, No. 105,414, 2011 WL 6311105 (Kan. App. 2011) (unpublished opinion), to support his position. He argues that the facts there are similar to those here so he should obtain the same result:  no offset. In that case Jones was drawing Social Security when he suffered his work-related injuries. The ALJ, the Board, and the panel all found that under the *Dickens* exception to K.S.A. 2010 Supp. 44-501(h) the employer was not entitled to an offset of Jones' Social Security benefits against his workers compensation award.

Farley's reliance on that case is misplaced. In *Jones* the fact of Jones' preaccident retirement, the determinative fact triggering the *Dickens* exception, was simply not in dispute. The only issue before the panel was the employer's claim that the *Dickens* case was bad law and, regardless of Jones' unchallenged preaccident retirement, Jones' award should be subject to the offset under the plain language of K.S.A. 2010 Supp. 44-501(h). The opinion was, as Farley notes, short. That is because the issue was narrow and controlled by *Dickens*. Finally, the *Jones* panel observed the importance of a finding of a preaccident retirement in order to avoid the offset provisions of K.S.A. 2010 Supp. 44-501(h). In the opening paragraph of the opinion the panel stated:  "Finding that a

12

reduction is not required when an employee retires and then returns to work to supplement his or her income, we affirm." *Jones*, 2011 WL 6311105, at *1.

Above Par cites us to another unpublished case it argues is more apposite to our facts. In *Morales v. Wal-Mart*, No. 107,526, 2013 WL 1010438 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. ___ (October 17, 2013), the panel reversed the Board's decision denying Wal-Mart an offset under K.S.A. 2009 Supp. 44-501(h). Morales went to work for Wal-Mart in 2008 and, while she was working, began to draw her old-age Social Security benefits. Subsequently she suffered a job-related injury. The relevant facts and holdings in *Morales* follow:

> "While Morales' attorney argued in a submission letter to the ALJ that Morales had retired but continued to work in order to supplement her income and was limiting her income to stay within the limits to retain social security benefits, Morales did not provide testimony on these points and there is no evidence in the record to support them.
>
> "The statutory exception set forth by *Dickens* is based on the rationale that workers who already are retired and receiving social security retirement benefits before starting work on a part-time job to supplement those benefits suffer a second wage loss when they are injured in the course of their employment. See *Dickens*, 266 Kan. at 1071. Although Morales began receiving social security retirement benefits before her injury, *the fact that she received those benefits does not necessarily mean that she was retired.* See *McIntosh*, 32 Kan. App. 2d at 897 ('to retire is "'to terminate employment or service upon reaching retirement age'"'). *In the absence of evidence in the record showing that Morales was retired and working at Wal-Mart to supplement her income at the time of her injury, Wal-Mart is entitled to an offset for retirement benefits she received. See K.S.A. 2009 Supp. 44-501(h).*" (Emphasis added.) 2013 WL 1010438, at *5.

We agree with the *Morales* panel's analysis and apply that approach to resolve Farley's issue. Attorney arguments are not evidence. The receipt of old-age Social Security benefits is relevant in determining whether one has retired, but it does not

13

constitute, in and of itself, a retirement. In the absence of evidence in the record proving a preinjury retirement, the offset in K.S.A. 2009 Supp. 44-501(h) applies.

We have conducted our unlimited review of the Board's conclusions of law. We do not need to expand or expound on the underpinnings of the *Dickens* and *McIntosh* holdings. The rules derived from those holdings are well-established, and we have stated them above. The Board correctly took those same holdings into account when it ruled. We acknowledge, as did the Board, that our Supreme Court has become more inclined to apply a plain language approach to the construction of workers compensation statutes. See, *e.g.*, *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 610, 214 P.3d 676 (2009); *Graham v. Dokter Trucking Group*, 284 Kan. 547, 556-57, 161 P.2d 695 (2007). However, we note that, after applying a plain language approach in *Bergstrom* and *Graham*, the Supreme Court had an opportunity to step back from its *Dickens* interpretation of K.S.A. 44-501(h) and did not do so. See *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, 286, 241 P.3d 15 (2010).

The Supreme Court in *Robinson* confirmed that the *Dickens/McIntosh* approach to the application of K.S.A. 2009 Supp. 44-501(h) retains its vitality. "In the absence of some indication the court is departing from its previous position, this court is duty bound to follow Supreme Court precedent." *Anderson Office Supply v. Advanced Medical Assocs.*, 47 Kan. App. 2d 140, 161, 273 P.3d 786 (2012). Since Farley had not retired before his injury, his circumstances do not fall within the *Dickens* exception to the application of K.S.A. 2009 Supp. 44-501(h). The Board did not erroneously interpret or apply the statute when it offset Farley's old-age Social Security retirement benefits against his workers compensation award.

We note that Above Par contends that the Board erred in failing to apply the Social Security offset to the temporary total disability compensation awarded Farley. To the extent that Above Par is challenging some portion of the Board's order, and not

14

merely arguing an alternative basis for affirming the Board's decision, this court lacks the jurisdiction to entertain that challenge. Above Par did not file a timely cross-petition for judicial review. See *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 191-92, 106 P.3d 483 (2005).

Affirmed.